FILED _X_ LODGED
_ RECEIVED _ COPY

MAY 0 1 2012

CLERK U S DISTRICT COURT
DISTRICT OF ARIZONA
BY_____ DEPUTY

_ FILED _ LODGED
_ RECEIVED _ COPY

DEC 0 3 2012

CLERK U S DISTRICT COURT
DISTRICT OF ARIZONA
BY_____ DEPUTY

ANN BIRMINGHAM SCHEEL
Acting United States Attorney
District of Arizona

JONELL L. LUCCA
Assistant U.S. Attorney
Arizona State Bar No. 021543
Two Renaissance Square
40 N. Central Avenue, Suite 1200
Phoenix, Arizona 85004-4408
Telephone (602) 514-7500
jonell.lucca@usdoj.gov

# UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

United States of America,

Plaintiff,

v.

Cruz Samuel Ortega-Ruano,

Defendant.

CR-11-0731-001-PHX-FJM

**PLEA AGREEMENT**

Plaintiff, United States of America, and the defendant, Cruz Samuel Ortega-Ruano, hereby agree to dispose of this matter on the following terms and conditions:

1. **PLEA**

The defendant will plead guilty to Count 1 of the Superseding Indictment charging the defendant with Conspiracy to Possess with Intent to Distribute Methamphetamine, a Controlled Substance, a violation of 21 United States Code (U.S.C.) §§ 846, 841(a)(1) and 841(b)(1)(A)(viii), a Class A felony offense. The defendant admits to the forfeiture allegations.

2. **MAXIMUM PENALTIES**

a.     A violation of 21 U.S.C. §§ 846, 841(a)(1) and 841(b)(1)(A)(viii), is punishable by a maximum fine of $10,000,000, a mandatory minimum term of imprisonment of ten years and a maximum term of imprisonment of life imprisonment, or both, and a term of supervised release of at least five years.

b.     According to the Sentencing Guidelines issued pursuant to the Sentencing Reform Act of 1984, the Court shall order the defendant to:

(1)     make restitution to any victim of the offense pursuant to 18 U.S.C. § 3663 and/or 3663A, unless the Court determines that restitution would not be appropriate;

(2)      pay a fine pursuant to 18 U.S.C. § 3572, unless the Court finds that a fine is not appropriate;

(3)      serve a term of supervised release when required by statute or when a sentence of imprisonment of more than one year is imposed (with the understanding that the Court may impose a term of supervised release in all other cases); and

(4)      pay upon conviction a $100.00 special assessment for each count to which the defendant pleads guilty pursuant to 18 U.S.C. § 3013(a)(2)(A).

c.      The Court is required to consider the Sentencing Guidelines in determining the defendant's sentence.  However, the Sentencing Guidelines are advisory, and the Court is free to exercise its discretion to impose any reasonable sentence up to the maximum set by statute for the crime(s) of conviction, unless there are stipulations to the contrary that the Court accepts.

d.      Pursuant to 21 U.S.C. Section 862, a conviction can result in the defendant and his family losing eligibility for certain welfare, food stamp and social security benefits.

e.      Defendant recognizes that pleading guilty may have consequences with respect to his immigration status if he either is a recent naturalized United States citizen or is not a citizen of the United States. Under federal law, a broad range of crimes are removable offenses, including the offense(s) to which defendant is pleading guilty. Removal and other immigration consequences are the subject of a separate proceeding, however, and defendant understands that no one, including his attorney or the district court, can predict to a certainty the effect of his conviction on his status in the United States. Defendant nevertheless affirms that he wants to plead guilty regardless of any immigration consequences that his plea may entail, even if the consequence is his automatic removal from the United States.

3.      **AGREEMENTS REGARDING SENTENCING**

a.      <u>Stipulation.</u> Pursuant to Fed. R. Crim. P. 11(c)(1)(C), the parties stipulate that the Defendant shall receive a sentence that does not exceed the low end of the applicable sentencing guideline range, as determined by the Court.

b.    <u>Non-Binding Recommendations.</u>    The defendant understands that recommendations are not binding on the Court.  The defendant further understands that the defendant will not be permitted to withdraw the guilty plea if the Court does not follow a recommendation.

c.    <u>Acceptance of Responsibility.</u>  If the defendant makes full and complete disclosure to the U.S. Probation Office of the circumstances surrounding the defendant's commission of the offense, and if the defendant demonstrates an acceptance of responsibility for this offense up to and including the time of sentencing, the United States will recommend a two-level reduction in the applicable Sentencing Guidelines offense level pursuant to U.S.S.G.§ 3E1.1(a). If the defendant has an offense level of 16 or more, the United States will recommend an additional one-level reduction in the applicable Sentencing Guidelines offense level pursuant to U.S.S.G. § 3E1.1(b).

d.    <u>Criminal History Options</u> This plea agreement is expressly conditioned upon the accuracy of the defendant's criminal history as known by the government at the time of the plea. The discovery of any criminal history in addition to that known shall entitle the government to withdraw from this agreement.

**4.    <u>AGREEMENT TO DISMISS OR NOT TO PROSECUTE</u>**

a.    Pursuant to Fed. R. Crim. P. 11(c)(1)(A), the United States shall dismiss the following charges: **Counts 2 and 6.**

b.    This office shall not prosecute the defendant for any violation of 18 U.S.C. § 924(c), which occurred between January 2011 and April 13, 2011.

c.    This agreement does not, in any manner, restrict the actions of the United States in any other district or bind any other United States Attorney's Office.

5.      **COURT APPROVAL REQUIRED; REINSTITUTION OF PROSECUTION**

       If the Court, after reviewing this plea agreement, concludes that any provision contained herein is inappropriate, it may reject the plea agreement and give the defendant the opportunity to withdraw the guilty plea in accordance with Fed. R. Crim. P. 11(c)(5).

       If the defendant's guilty plea or plea agreement is rejected, withdrawn, vacated, or reversed at any time, this agreement shall be null and void, the United States shall be free to prosecute the defendant for all crimes of which it then has knowledge and any charges that have been dismissed because of this plea agreement shall automatically be reinstated. In such event, the defendant waives any and all objections, motions, and defenses based upon the Statute of Limitations, the Speedy Trial Act, or constitutional restrictions in bringing later charges or proceedings. The defendant understands that any statements made at the time of the defendant's change of plea or sentencing may be used against the defendant in any subsequent hearing, trial, or proceeding subject to the limitations of Fed. R. Evid. 410.

6.      **WAIVER OF DEFENSES AND APPEAL RIGHTS**

       Providing the defendant's sentence is consistent with this agreement, the defendant waives (1) any and all motions, defenses, probable cause determinations, and objections that the defendant could assert to the indictment or information; and (2) any right to file an appeal, any collateral attack, and any other writ or motion that challenges the conviction, an order of restitution or forfeiture, the entry of judgment against the defendant, or any aspect of the defendant's sentence, including the manner in which the sentence is determined, including but not limited to any appeals under 18 U.S.C. § 3742 and motions under 28 U.S.C. §§ 2241 and 2255. The defendant acknowledges that if the Court has sentenced the defendant according to the terms of this agreement, this waiver shall result in the dismissal of any appeal, collateral attack, or other motion the defendant might file challenging the conviction, order of restitution or forfeiture, or sentence in this case.

7.    **DISCLOSURE OF INFORMATION**

a.    The United States retains the unrestricted right to provide information and make any and all statements it deems appropriate to the U.S. Probation Office and to the Court in connection with the case.

b.    Any information, statements, documents, and evidence that the defendant provides to the United States pursuant to this agreement may be used against the defendant at any time.

c.    The defendant shall cooperate fully with the U.S. Probation Office.  Such cooperation shall include providing complete and truthful responses to questions posed by the U.S. Probation Office including, but not limited to, questions relating to:

(1)    criminal convictions, history of drug abuse, and mental illness; and

(2)    financial information, including present financial assets or liabilities that relate to the ability of the defendant to pay a fine or restitution.

8.    **FORFEITURE, CIVIL, AND ADMINISTRATIVE PROCEEDINGS**

a. The defendant agrees that, on or before April 13, 2011, he was in actual or constructive possession of one 2008 grey Honda Civic Si with VIN 2HGFA55598H702917; $23,283.00 in U.S. currency; 60 firearms identified by serial number and description as listed in the attached two-page Addendum; firearms' magazines; pistol grips; firearms' cases; bayonets; and ammunition.

b. This property was seized by the United States Drug Enforcement Administration on or between April 11-14, 2011.

c. Pursuant to the provisions of 21 U.S.C. § 853(a) and the allegations contained in the superseding indictment, the defendant agrees to forfeit all interest he owns, possesses, or controls in any drug trafficking related assets which the defendant currently owns; has previously owned; or over which the defendant currently, or has in the past, exercised control, directly or indirectly; and any property the defendant has transferred, as well as any property that is traceable to, derived from, or fungible with property which constitutes the proceeds of the offenses, and

5

property involved in the offenses, including but not limited to the following:

        1. one 2008 grey Honda Civic Si with VIN 2HGFA55598H702917;

        2. $23,283.00 in U.S. currency; and

        3. 60 firearms identified by serial number and description as listed in the attached addendum; firearms' magazines; pistol grips; firearms' cases; bayonets; and ammunition.

        Defendant acknowledges that the property listed above was used by himself or others to facilitate violations of 21 U.S.C. § 801 et seq. Defendant admits that he was in actual or constructive possession of the above property. Defendant agrees to do whatever is necessary to pass clear title to the property to the United States. Defendant consents to the forfeiture of such property and admits that the property represents property that is traceable to, derived from, or fungible with property which constitutes the proceeds of the offenses, and property involved in the offenses.

    d. Defendant further admits that the firearms, ammunition, and related firearms' equipment are subject to seizure and forfeiture by the United States and that no defense exists to the seizure and forfeiture of that property by the United States.

    e. Defendant renounces all right, title, and interest in the firearms and ammunition, withdraws any and all claims to that property, and agrees not to contest forfeiture of the property by the United States. Defendant understands that the United States will dispose of the property in accordance with the law. The defendant hereby agrees to withdraw any claim made in any civil, administrative or judicial forfeiture brought against the firearms listed, and further agrees not to oppose any civil, administrative or judicial forfeiture of the firearms.

    f. Defendant agrees to hold harmless and waive any claim for damages or cause of action of any nature whatsoever against the United States, including the United States Drug Enforcement Administration and any other state or local government or agency, as well as any agents and employees thereof based on the seizure, storage, or forfeiture of the property described above.

g. The defendant agrees to make a full and complete disclosure of all assets over which the defendant exercises or exercised control, directly or indirectly, and any assets which have been held or controlled by a nominee(s), within the past five (5) years, or in which the defendant has or had during that time, any financial interest. Such disclosure will require the defendant to complete a Financial Statement of Debtor form. The defendant agrees to take all steps as requested by the United States to obtain from any other parties, by any lawful means, any records of assets owned by the defendant.

h. Defendant represents and warrants to the government that defendant has no interest, either direct or indirect, whether held in defendant's own name or in the name of a relative, spouse, or associate, in any property, real or personal, or asset that would be subject to forfeiture on the basis of the violations covered by this plea agreement other than the property noted above.

i. The defendant further agrees to assist in bringing any forfeitable assets located outside the United States within the jurisdiction of the United States, and taking whatever steps are necessary to ensure that assets subject to forfeiture are not sold, disbursed, wasted, hidden or otherwise made unavailable for forfeiture.

j. The defendant agrees to undergo any polygraph examination the United States may choose to administer, with an examiner selected by the government, concerning defendant's assets and to either provide, or consent to the release of, the defendant's tax returns for the previous five (5) years. If the polygraph examination results indicate an intent to deceive the government with respect to assets, the defendant will be afforded the opportunity to review and explain the deceptive responses. If, after consideration of defendant's responses, the government is convinced defendant's financial statement is not complete and truthful, the government is free to pursue all forfeiture remedies available.

k. The defendant hereby waives the requirements of Federal Rules of Criminal Procedure 43(a) with respect to the imposition of any forfeiture sanction carried out in accordance with this Plea Agreement, and further agrees to not contest or challenge in any manner (including direct appeal, habeas corpus, or any other means) such forfeiture on any grounds, including that the forfeiture constitutes double jeopardy, or an excessive fine or punishment.

7

l.  This agreement does not preclude the United States from instituting any civil or administrative proceedings as may be appropriate now or in the future.

m.  The defendant agrees to waive all constitutional and statutory challenges in any manner (including direct appeal, habeas corpus, double jeopardy or any other means) to any forfeiture imposed as a result of this Superseding Indictment and/or any pending or completed administrative or civil forfeiture actions based upon the course of conduct that provides the factual basis for the forfeiture, including that the forfeiture constitutes an excessive fine or punishment.  The defendant agrees to take all steps as requested by the United States to pass clear title to forfeitable assets to the United States, and to testify truthfully in any judicial forfeiture proceeding.  Defendant acknowledges that all property covered by this agreement is subject to forfeiture as proceeds of illegal conduct and/or property facilitating illegal conduct.

n.  Defendant agrees not to file a claim to any of the listed property in any civil proceeding, administrative or judicial, which may be initiated.  Defendant further agrees that he will not contest civil, administrative or judicial forfeiture of the listed property.  Defendant agrees to waive his right to notice of any forfeiture proceeding involving this property, and agrees not to file a claim or assist others in filing a claim in that forfeiture proceeding.

o.  The government reserves its right to proceed against any remaining assets not identified either in this agreement or in any civil actions which are being resolved along with this plea of guilty, including any property in which the defendant has any interest or control, if said assets, real or personal, tangible or intangible were involved in drug trafficking violations.

p. Defendant agrees to consent to the entry of orders of forfeiture for such property and waives the requirements of Federal Rule of Criminal Procedure 32.2 and 43(a) regarding notice of the forfeiture in the charging instrument, announcement of the forfeiture at sentencing, and incorporation of the forfeiture in the judgment.  The defendant further understands and agrees that forfeiture of the assets is in accordance with both 21 U.S.C. § 853 and 18 U.S.C. § 982. Defendant further agrees that a Final Order of Forfeiture may be issued prior to sentencing if no third party claims are made.

9.    **ELEMENTS**

**Conspiracy**

I agree and admit that the United States can prove each of the following elements of Count One of the Superseding Indictment, Conspiracy to Possess With Intent to A Distribute Controlled Substance, beyond a reasonable doubt:

**Element One:**

On or between January 2011 and April 14, 2011, there was an agreement between two or more persons in the District of Arizona to commit the crime of Possession With Intent to Distribute A Controlled Substance.

**Element Two:**

I became a party to this agreement on or before January 2011 knowing of at least one of its objects and intending to help accomplish it.

I understand that the crime of Conspiracy to Possess With Intent to Distribute a Controlled Substance is committed by simply agreeing to take part in the underlying crime of Possession With Intent to Distribute a Controlled Substance, and intending to help complete that crime. I further understand that this means *agreeing* with others with the intent to complete that underlying crime is the criminal act called Conspiracy and it does not matter if the underlying crime agreed to is actually completed to be found guilty.

*[In this case, the underlying crime I agreed to commit, that is, Possession With Intent to*
*Distribute a Controlled Substance, is committed when the following occurs:*

*1.    A person possesses a controlled substance within the District of Arizona;*
*and*

*2.    The person possesses it with the intent to deliver it to another person.]*

I further understand that is does not matter if I knew which controlled substance was the subject of the crime. It is sufficient that I simply knew it was a controlled substance.

10.   **FACTUAL BASIS**

The defendant admits that the following facts are true and that if this matter were to proceed to trial the United States could prove the following facts beyond a reasonable doubt:

9

Beginning on or before January 2011 and continuing through April 14, 2011, in the District of Arizona, I, Cruz Ortega-Ruano, conspired with others to possess with intent to distribute a controlled substance. From the discovery provided to my attorney, I know that between those dates, the DEA investigated the Ortega-Ruano Drug Trafficking Organization (DTO). I was a member of the Ortega-Ruano DTO, which was run by myself, at the direction of individuals in Mexico. The DTO distributed quantities of methamphetamine from the Phoenix, Arizona area to its customers.  The DTO used three different residences to facilitate its narcotics trafficking: 8116 W. San Miguel Avenue, Glendale, AZ; 2418 S. 82nd Lane, Phoenix, AZ; and 10944 W. Hazelwood Street, Phoenix, AZ.  From the discovery provided to my attorney, I know that agents intercepted telephone calls on telephones used by myself and Artemio Pena-Torrecillas, another facilitator for the DTO. I admit that I am the person identified as Cruz on the wiretap and that it is my voice on the intercepted telephone calls in which Cruz participated.

My role in the Ortega-Ruano DTO was to obtain the narcotics from the source of supply (or instruct my runner, Gerardo Diarte-Lara aka Chiquillo, to do so on my behalf), negotiate with the customers to arrange the sale of drugs, and collect narcotics proceeds that were sent to Mexico. I knew that the packages of drugs I was obtaining contained methamphetamine. I knew that I possessed the methamphetamine with the intent to distribute the drugs to customers of the Ortega-Ruano DTO and agreed with others to distribute the drugs.

The Ortega-Ruano DTO had numerous narcotics' couriers and buyers.  On March 12, 2011, two couriers for this DTO were arrested by local law enforcement in northern Arizona when approximately 5.4 pounds of methamphetamine was seized from a hidden compartment in the Dodge they were driving. On April 11, 2011, two couriers for this DTO were arrested by local law enforcement in Arizona when approximately 5.5 pounds of methamphetamine was seized from a hidden compartment in the Dodge they were driving. The drugs were loaded into the Dodge at the San Miguel house. I provided the documents for the Dodge to Artemio Pena-Torrecillas, who along with Juan Martin Tapia-Bernal, delivered the Dodge to the narcotics'

1    couriers. The total amount of methamphetamine (approximately 10.9 pounds) seized was being

2    distributed by this DTO.

3           On April 12, 2011, while at my residence on San Miguel, law enforcement officers

4    arrived at the house and executed a search warrant. I, along with Artemio Pena-Torrecillas and

5    Juan Martin Tapia-Bernal, were all arrested at that time.  From the San Miguel house, agents

6    seized a Honda Civic, U.S. currency, seven firearms, ammunition, and sample quantities of

7    drugs. From discovery provided to my attorney, I know that law enforcement also executed

8    search warrants at the two other residences used by the Ortega-Ruano DTO. From the 82nd Lane

9    house, agents seized quantities of marijuana, bayonets, gun labels and tags, gun cases, firearm

10   magazines, ammunition, and electronic scales. From the Hazelwood house, agents seized 4.13

11   pounds/1.7 kilograms of actual methamphetamine, quantities of marijuana, packaging materials,

12   electronic scales, seven firearms, firearm magazines, and ammunition. I also know from

13   discovery that agents seized 46 rifles and many firearm magazines from a BMW X5 driven by

14   my runner, Gerardo Diarte-Lara, and Francisco Torrecillas-Torres aka Kiko, after they left the

15   82nd Lane house.

16          The defendant shall swear under oath to the accuracy of this statement and, if the

17   defendant should be called upon to testify about this matter in the future, any intentional material

18   inconsistencies in the defendant's testimony may subject the defendant to additional penalties

19   for perjury or false swearing, which may be enforced by the United States under this agreement.

20                    **APPROVAL AND ACCEPTANCE OF THE DEFENDANT**

21          This agreement has been read to me in Spanish, and I have carefully reviewed every part

22   of it with my attorney.  I understand it and I voluntarily agree to it.

23          I have discussed the case and my constitutional and other rights with my attorney.  I

24   understand that by entering my plea of guilty I shall waive my rights to plead not guilty, to trial

25   by jury, to confront, cross-examine, and compel the attendance of witnesses, to present evidence

26   in my defense, to remain silent and refuse to be a witness against myself by asserting my

27   privilege against self-incrimination, all with the assistance of counsel, and to be presumed

28   innocent until proven guilty beyond a reasonable doubt.

1    I agree to enter my guilty plea as indicated above on the terms and conditions set forth

2    in this agreement.

3    I have been advised by my attorney of the nature of the charges to which I am entering

4    my guilty plea.  I have further been advised by my attorney of the nature and range of the

5    possible sentence and that my ultimate sentence shall be determined by the Court after

6    consideration of the advisory Sentencing Guidelines.

7    My guilty plea is not the result of force, threats, assurances, or promises, other than the

8    promises contained in this agreement. I voluntarily agree to the provisions of this agreement and

9    I agree to be bound according to its provisions.

10   I understand that if I am granted probation or placed on supervised release by the Court,

11   the terms and conditions of such probation/supervised release are subject to modification at any

12   time. I further understand that if I violate any of the conditions of my probation/supervised

13   release, my probation/supervised release may be revoked and upon such revocation,

14   notwithstanding any other provision of this agreement, I may be required to serve a term of

15   imprisonment or my sentence otherwise may be altered.

16   This written plea agreement, and any written addenda filed as attachments to this plea

17   agreement, contain all the terms and conditions of the plea.  Any additional agreements, if any

18   such agreements exist, shall be recorded in a separate document and may be filed with the Court

19   under seal; accordingly, additional agreements, if any, may not be in the public record.

20   I further agree that promises, including any predictions as to the Sentencing Guideline

21   range or to any Sentencing Guideline factors that will apply, made by anyone (including my

22   attorney) that are not contained within this written plea agreement, are null and void and have

23   no force and effect.

24   I am satisfied that my defense attorney has represented me in a competent manner.

25   ///

26   ///

27

28

12

1    I fully understand the terms and conditions of this plea agreement.  I am not now using

2    or under the influence of any drug, medication, liquor, or other intoxicant or depressant that

3    would impair my ability to fully understand the terms and conditions of this plea agreement.

4

5    4/26/12                          Cruz Ortega Ruano
     Date                            CRUZ ORTEGA-RUANO

6                                    Defendant

7
                        **APPROVAL OF DEFENSE COUNSEL**
8
9        I have discussed this case and the plea agreement with my client in detail and have

10   advised the defendant of all matters within the scope of Fed. R. Crim. P. 11, the constitutional

11   and other rights of an accused, the factual basis for and the nature of the offense to which the

12   guilty plea will be entered, possible defenses, and the consequences of the guilty plea including

13   the maximum statutory sentence possible.  I have further discussed the concept of the advisory

14   Sentencing Guidelines with the defendant.  No assurances, promises, or representations have

15   been given to me or to the defendant by the United States or any of its representatives that are

16   not contained in this written agreement.  I concur in the entry of the plea as indicated above and

17   that the terms and conditions set forth in this agreement are in the best interests of my client.

18       I translated or had translated this agreement from English into Spanish to the defendant

19   on the 23 & 26 day of April , 2012.

20       I agree to make a bona fide effort to ensure that the guilty plea is entered in accordance

21   with all the requirements of Fed. R. Crim. P. 11.

22

23

24   4/26/12
     Date                            ALAN M. SIMPSON
25                                   Attorney for Defendant

26

27

28

                                    13

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**APPROVAL OF THE UNITED STATES**

      I have reviewed this matter and the plea agreement. I agree on behalf of the United States that the terms and conditions set forth herein are appropriate and are in the best interests of justice.

ANN BIRMINGHAM SCHEEL
Acting United States Attorney
District of Arizona

5/3/12
Date

JONELL L. LUCCA
Assistant U.S. Attorney

**ACCEPTANCE BY THE COURT**

_____
Date

THE HONORABLE FREDERICK J. MARTONE
United States District Judge

14

1

## ADDENDUM

2 **46 Firearms recovered from DEA Vehicle Stop of a BMW-X5 SUV:**

3 Romarm/Cugir 7.62 x 39mm rifle model GP-WASR 10/63UF, serial number 1971DB2561

4 Romarm/Cugir 7.62 x 39mm rifle model GP-WASR 10/63UF, serial number 1971DC3162

Romarm/Cugir 7.62 x 39mm rifle model GP-WASR 10/63UF, serial number 1981ZL3206

5 Romarm/Cugir 7.62 x 39mm rifle model GP-WASR 10/63UF, serial number 1982ZP6418

6 Romarm/Cugir 7.62 x 39mm rifle model GP-WASR 10/63UF, serial number 1969BN0826

7 Romarm/Cugir 7.62 x 39mm rifle model GP-WASR 10/63UF, serial number 1970DA3509

Romarm/Cugir 7.62 x 39mm rifle model GP-WASR 10/63UF, serial number 1971DA4277

8 Romarm/Cugir 7.62 x 39mm rifle model GP-WASR 10/63UF, serial number 1971DA4481

9 Romarm/Cugir 7.62 x 39mm rifle model GP-WASR 10/63UF, serial number 1971DF3673

10 Romarm/Cugir 7.62 x 39mm rifle model GP-WASR 10/63UF, serial number 1981ZL1348

Romarm/Cugir 7.62 x 39mm rifle model GP-WASR 10/63UF, serial number 1981ZL2259

11 Romarm/Cugir 7.62 x 39mm rifle model GP-WASR 10/63UF, serial number 1986ZV5874

12 Romarm/Cugir 7.62 x 39mm rifle model GP-WASR 10/63UF, serial number 1971DD2315

13 Romarm/Cugir 7.62 x 39mm rifle model GP-WASR 10/63UF, serial number 1972DJ0643

Romarm/Cugir 7.62 x 39mm rifle model GP-WASR 10/63UF, serial number 1981ZM0166

14 Romarm/Cugir 7.62 x 39mm rifle model GP-WASR 10/63UF, serial number 1985ZS2795

15 Romarm/Cugir 7.62 x 39mm rifle model GP-WASR 10/63UF, serial number 1968BF0419

16 Romarm/Cugir 7.62 x 39mm rifle model GP-WASR 10/63UF, serial number 1972DJ0635

Romarm/Cugir 7.62 x 39mm rifle model GP-WASR 10/63UF, serial number 1972DJ4986

17 Romarm/Cugir 7.62 x 39mm rifle model GP-WASR 10/63UF, serial number 1981ZL4832

18 Romarm/Cugir 7.62 x 39mm rifle model GP-WASR 10/63UF, serial number 1970DA3719

19 Romarm/Cugir 7.62 x 39mm rifle model GP-WASR 10/63UF, serial number 1971DF3886

Romarm/Cugir 7.62 x 39mm rifle model GP-WASR 10/63UF, serial number 1971DF4406

20 Romarm/Cugir 7.62 x 39mm rifle model GP-WASR 10/63UF, serial number 1974DN4368

21 Romarm/Cugir 7.62 x 39mm rifle model GP-WASR 10/63UF, serial number 1981ZL4009

22 Romarm/Cugir 7.62 x 39mm rifle model GP-WASR 10/63UF, serial number 1982ZR0676

Romarm/Cugir 7.62 x 39mm rifle model GP-WASR 10/63UF, serial number 1971DC3742

23 Romarm/Cugir 7.62 x 39mm rifle model GP-WASR 10/63UF, serial number 1974DP2841

24 Romarm/Cugir 7.62 x 39mm rifle model GP-WASR 10/63UF, serial number 1981ZL3906

25 Romarm/Cugir 7.62 x 39mm rifle model GP-WASR 10/63UF, serial number 1984ZN7667

Romarm/Cugir 7.62 x 39mm rifle model GP-WASR 10/63UF, serial number 1981ZM0234

26 Romarm/Cugir 7.62 x 39mm rifle model GP-WASR 10/63UF, serial number 1981ZL1874

27 Romarm/Cugir 7.62 x 39mm rifle model GP-WASR 10/63UF, serial number 1977ZB1698

28 Romarm/Cugir 7.62 x 39mm rifle model GP-WASR 10/63UF, serial number 1971DD1037

Romarm/Cugir 7.62 x 39mm rifle model GP-WASR 10/63UF, serial number 1971DC2634
Romarm/Cugir 7.62 x 39mm rifle model GP-WASR 10/63UF, serial number 1971DB0766
Romarm/Cugir 7.62 x 39mm rifle model GP-WASR 10/63UF, serial number AG58081989
Romarm/Cugir 7.62 x 39mm rifle model GP-WASR 10/63UF, serial number 1982ZP5800
Romarm/Cugir 7.62 x 39mm rifle model GP-WASR 10/63UF, serial number 1977ZB3947
Romarm/Cugir 7.62 x 39mm rifle model GP-WASR 10/63UF, serial number 1971DF3980
Romarm Cugir 7.62 x 39mm pistol model DRACO, serial number DR-3352-09
Romarm Cugir 7.62 x 39mm pistol model DRACO, serial number DR-4508-09
Romarm Cugir 7.62 x 39mm pistol model DRACO, serial number DR-4038-09
Romarm Cugir 7.62 x 39mm pistol model DRACO, serial number DR-4871-09
Romarm Cugir 7.62 x 39mm pistol model DRACO, serial number DR-3306-09
Romarm Cugir 7.62 x 39mm pistol model DRACO, serial number DR-4703-09

**7 Firearms recovered from 8116 W. San Miguel Avenue, Glendale, AZ:**

Beretta 9mm handgun, model M9, serial number M9-123227
Beretta 9mm handgun, model 92FS, serial number D11150Z
Beretta 9mm handgun, model 92FS, serial number E39155Z
F.N. Herstal 5.7 pistol model 5.7 handgun, serial number 386205693
Colt Super .38 caliber handgun, serial number 38SS01144
Romarm Cugir 7.62 x 39mm pistol model DRACO, serial number DR3548-09
Romarm Cugir 7.62 x 39mm pistol model DRACO, serial number DR4459-09

**7 Firearms recovered from 10944 West Hazelwood, Phoenix, AZ:**

Colt .22 caliber short pistol model junior, serial number 54900CC
Fabrique National 5.7 Rifle model P90, serial number FN051415
Fabrique National 5.7 Rifle model P90, serial number FN061845
Romarm Cugir 7.62 x 39mm pistol model DRACO, serial number DR3922-09
Romarm Cugir 7.62 x 39mm pistol model DRACO, serial number DR3846-09
Romarm Cugir 7.62 x 39mm pistol model DRACO, serial number DR4526-09
Romarm Cugir 7.62 x 39mm pistol model DRACO, serial number DR4110-09

16